**Billy John WILLIAMS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–746.**

Court of Criminal Appeals of Oklahoma.

April 21, 1976.

Michael Cameron Conaway, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## MEMORANDUM OPINION

BLISS, Judge:

Appellant, Billy John Williams, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pottawatomie County, Case No. CRF–74–541, for the offense of Robbery With Firearms, in violation of 21 O.S. Supp.1973, § 801. His punishment was fixed by the trial court at a term of fifteen (15) years' imprisonment. From this judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Barry Jackson who testified that he owned a convenience store in Tecumseh, Oklahoma, known as John's Short Stop, and that he was operating the store on November 24, 1974. On that evening at approximately 9:00 p. m., he was taking a candy order when an individual appearing to be of Indian descent entered the south door with a rifle and told him to get behind the cash register. Upon complying with the order he heard the west door open and as he started to look in that direction an individual entering the door told him, "Don't look this way or I'll kill you." Pursuant to instructions from the individuals, he thereafter put all the money in the cash register into a bag and gave it to the individual who had come in through the west door. He then lay on the floor on his stomach as directed by the robbers. He was told by one of the robbers not to move for five minutes as they had a friend outside who would kill him. After a short time he heard tires squealing whereafter he raised himself from the floor and retrieved his glasses which had been removed by the robber who had entered through the south door. Upon going outside he observed a Highway Patrol car approaching and he shouted to the officer that he had been robbed by some Indians and indicated that they had left in a westerly direction. He further testified that he did not see the men get into any vehicle. He related that approximately $285.00 to $290.00 had been taken from his establishment on that evening. Upon being shown State's Exhibit No. 1, he identified it as a rifle similar to the one which had been used in the robbery.

On cross-examination he clarified the fact that he saw only one Indian, but that he assumed more Indians were involved, and that was the reason he had told the Highway Patrol that some Indians had robbed him. He also reiterated that he never saw any vehicle and that he did not hear anything mentioned to the patrolman

who stopped in front of his establishment regarding a description of the robbers' vehicle.

Mike Robinson testified that he was 16 years of age, residing in Tecumseh, Oklahoma, and that he and one Rick Newsum were riding around in Tecumseh on the evening of November 24, 1974, when at approximately 9:00 p. m. they stopped at John's Short Stop to obtain some cigarettes from another car which was parked there and observed someone run across the road carrying a rifle or shotgun and a paper bag in their hand. He described the individual as "not real tall, about medium size, heavy-set, and he had long hair pulled back in a ponytail, he was an Indian." He further testified that he did not see the man get into any vehicle because he lost sight of him when he ran into the shadows, but that he was certain the individual ran in a westerly direction.

Paul Edward Sutton testified that he was a Trooper with the Oklahoma Highway Patrol and was so employed on the 24th of November, 1974. He testified that while on duty in Pottawatomie County he was traveling north on State Highway 18 at approximately 8:55 p. m. that day when he observed a blue Dodge or Plymouth southbound, flashing its lights and honking its horn. Thereafter, he stopped at John's Short Stop and the proprietor ran out of the door shouting that he had just been robbed and gesturing that they had gone in a westerly direction. He stated that there were approximately five to six people present in the parking lot and that he heard a statement that the robbers were three Indian males and that they had left in a red pickup. Thereafter, he traveled in a westerly direction and after proceeding two to three blocks observed a red pickup northbound at a high rate of speed. He activated his emergency equipment and pursued the vehicle. After the vehicle was stopped he called out to the occupants to get out with their hands up and after no response he called again, "Get out with your hands up, you are under arrest." The

three occupants then alighted from the pickup. He testified that the driver of the pickup was the defendant. After he told them to put their hands up, one of them responded, "What the hell for?", and one of the three started back to the pickup, reaching into the cab, where he observed the butt of a shotgun. Sutton then fired a warning shot and made the occupants lie on the ground. He then retrieved a shotgun out of the pickup and observed a brown paper bag, which contained some currency, on the front seat. Upon being shown State's Exhibits Nos. 1 and 2, he identified the exhibits as the shotguns which had been recovered from the pickup. Thereafter, he gave testimony relating to the identification and chain of custody of the exhibits. He testified that the occupants were then transported to the Sheriff's Office and booked. The money was inventoried and found to be in excess of $285.00.

Robert Mayo testified that he was a police officer in Tecumseh, Oklahoma, and was so employed on the 24th of November, 1974, when between 9:00 and 10:00 p. m. he responded to a call from the Tecumseh police dispatcher, relating to him that John's Short Stop had been robbed. Upon arrival at the police station he was told that three suspects were in custody and upon investigation of the robbery he, together with Lloyd Rogers, interrogated the defendant after having advised the defendant of his Miranda rights. The defendant related to him that he had been driving the pickup on that evening and had stopped at John's Short Stop in Tecumseh to buy some beer, whereafter he proceeded east from John's Short Stop approximately one block from the intersection of Fourth and Beech Streets. He stopped his vehicle to allow the two men with him to get out to use the restroom. Defendant related to him that the other two individuals were Michael Tiger and Robert Williams. He said the defendant's statement "got a little skippy" at that point, but that the defendant advised him that he let the two men

out at that point and he then proceeded to T-Town Auto Sales, or Jack Washburn's Car Lot, to look at a car, approximately four blocks south and another block east from where he allegedly let the two other men out of his vehicle. He testified that the defendant's statement "jumped again" and the next event which the defendant described was that he had parked approximately one block west of John's Short Stop, and had waited for the two other men to come back. Defendant further related to Officer Mayo that Michael Tiger ran up to the pickup carrying a paper bag and shortly thereafter Robert Williams came running up and jumped into his pickup. Defendant further related to the officer, upon inquiry, that the defendant had noticed the two other men had their guns with them when they came running back, but that the defendant had not seen the two men get their guns when he let them out to go to the restroom. Thereafter, Officer Mayo gave testimony regarding custody of State's Exhibits Nos. 1 and 2.

The defendant then took the stand to testify in his own behalf and gave the following account of the events which transpired on the 24th of November, 1974. After having installed a tie-rod on his pickup, the defendant's brother requested defendant to take him to his brother-in-law's house to get his gun, which defendant did. They both then went to buy some shells for the gun so that they could go hunting that evening, finally finding some shells at Stella's Grocery Store. Across the road from the grocery store they saw a turkey shoot, and after conversing with some people there they travelled about a mile from that location and practiced target shooting at a "telephone post." Thereafter, the defendant remembered that Michael Tiger had a .410 shotgun so they went to get Tiger's gun. They returned to the grocery store and noticed that the turkey shoot was over and, therefore, bought two six packs of beer, and then went driving, drinking beer and shooting at the empty cans. During that afternoon, they bought more beer and later that evening ate at Pink's Mexican restaurant. After eating they drove to Tecumseh because the defendant wanted to look at a car. They drove to John's Short Stop in Tecumseh and the defendant went in and bought some more beer. Upon leaving the convenience store, Michael Tiger told the defendant that he needed to use the restroom, whereafter both Michael Tiger and Robert Williams got out and the defendant drove around the block and waited for them. In approximately five minutes Michael Tiger ran up to the pickup followed by Robert Williams. After entering the pickup, they said to the defendant, "Let's go." Thereafter, the defendant drove west, made a couple of turns and then observed red flashing lights on a patrol car which was pursuing him. The defendant stopped the pickup and was arrested by the patrolman. The defendant, Michael Tiger and defendant's brother, Robert Williams, were then taken to the Pottawatomie County Jail where defendant related the previous events as described heretofore.

Lloyd Richardson testified that he operated a small grocery at Pink, Oklahoma, and that he had known the defendant for approximately two years. He testified that the defendant had traded at his store, that the defendant paid his bills, and that he seemed to be a quiet and kind person. He also testified that on the 24th of November, 1974, the defendant and two other individuals came to Pink's Grocery store, made a purchase, and proceeded to the restaurant to eat. He testified that upon going into the restaurant to make some change, he saw the three men and told the defendant he should go home to his wife and child and the defendant responded, "Yes, that's where we're going." Richardson stated that the three men purchased approximately three six packs of beer from him on that evening.

Ted Reynolds testified that he was a minister in Little Axe, Oklahoma, and that the defendant had a reputation of being honest in the community.

Mary Williams testified that the defendant was her husband and that on the 24th of November, 1974, he left their home in Little Axe with approximately $60.00 on his person. She said the defendant had told her he was going hunting. She testified that the defendant was a good provider.

The last two witnesses for the defense were Michael Wayne Tiger and Robert Ray Williams, Jr., defendant's brother, who both recalled the events of the 24th of November, 1974, essentially as had the defendant in his testimony. The two witnesses also testified that while in Tecumseh at John's Short Stop the defendant went in to buy some more beer and at that time witness Tiger and witness Williams remained in the car and discussed how easy it would be to rob the store. The two witnesses' testimony further revealed that upon directing the defendant to stop the car in order to allow Robert to use the restroom, the two witnesses got out of the pickup and Robert told the defendant to wait for them at a point nearby. On getting out of the pickup Robert reached into the bed of the pickup, got his gun, unseen by the defendant, and ran toward the restroom which was in the same building as the landromat and the convenience store. Thereafter, Michael Tiger, upon seeing Robert Williams running with his shotgun towards the store, grabbed his gun and followed Robert. Their testimony further revealed that they entered the convenience store and robbed the proprietor unbeknownst to the defendant. They then returned to the pickup and instructed defendant to drive away.

The defense then rested.

The defendant predicates the instant appeal on the following assignments of error: (1) That the trial court erred by finding the defendant guilty of robbery with firearms, being against the clear weight of the evidence throughout the non-jury trial; (2) That the trial court erred by finding the defendant guilty of robbery with firearms, said conviction being based solely and entirely on circumstantial evidence and in direct conflict with all evidence given during the course of the non-jury trial; and, (3) That the trial court erred by finding the defendant guilty of robbery with firearms, said conviction being contrary to the defendant's right to a presumption of innocence and contrary to the burden of proof placed upon the State of having to prove guilt beyond a reasonable doubt.

 The State urges the defendant cites no authority or case law for his assignments of error and, thus, *Sandefur v. State*, Okl.Cr., 461 P.2d 954 (1969), is applicable to the instant case. In *Sandefur, supra*, this Court stated:

" 'It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred.' See: *Collins v. State*, Okl.Cr., 407 P.2d 609."

However, we are compelled to consider the assignments of error upon the merits as the three assignments of error essentially raise the issue of sufficiency of the evidence to support the verdict. We need only observe that this Court has repeatedly held that where there is competent evidence in the record from which the trier of facts could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the determination of the trier of facts upon the grounds that the evidence is insufficient to support verdict. See, *Birdshead v. State*, Okl.Cr., 515 P.2d 1400 (1973). The evidence presented in the instant case, as reflected by the foregoing statement of facts although circumstantial in nature, is sufficient to support the trial court's verdict. See, *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973). For this reason we find no

reason to disturb the verdict rendered, and thus we find the defendant's first, second and third assignments of error to be without merit.

For all the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED*.

BRETT, P. J., and BUSSEY, J., concur.